UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No.  24cr10280 |
| | ) Violations: |
| | ) |
| v. | ) Counts One through Six: Health Care Fraud |
| | ) (18 U.S.C. § 1347) |
| MIGUEL SARAVIA, | ) |
| | ) Forfeiture Allegation: |
| Defendant | ) (18 U.S.C. § 982(a)(7)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Maron DGA, P.C. d/b/a Dana Group Associates (collectively, "DANA") was a behavioral health practice that provided psychotherapy, psychopharmacology, and neuropsychological testing to adults, adolescents, and children in the District of Massachusetts. DANA was incorporated in Massachusetts and its principal place of business was in Needham. Its staff consisted of psychologists, licensed mental health counselors, licensed social workers, nurse practitioners, and psychiatrists.

2.      Nova Psychiatric Services, P.C. (NOVA), d/b/a Prime Behavioral Health (collectively, "NOVA") was a provider of psychiatric and behavioral health services to patients in its offices, in hospitals, assisted living facilities, and nursing homes. Specifically, DANA leased employees to NOVA to provide health services in nursing homes. NOVA was incorporated in Massachusetts and had offices in Quincy and Weymouth. NOVA's staff consisted of clinical nurse specialists, licensed social workers, nurse practitioners, psychologists, psychiatrists, and licensed mental health counselors.

1

3.     Miguel Saravia ("SARAVIA") was the Chief Executive Officer at DANA and the Chief Operating Officer at NOVA.

<u>Health Care Programs</u>

4.     The Medicare program was a federally subsidized health insurance program for the elderly and for persons with certain disabilities pursuant to Title XVIII of the Social Security Act. The program was administered by the Health Care Financing Administration of the United States Department of Health and Human Services, which, on July 1, 2001, became the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services (collectively referred to in this Information as "CMS").

5.     The Medicare program was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries." Medicare Part B primarily covered outpatient medical services.

6.     Medicaid was a federal and state-funded health insurance program for children, disabled individuals, and families and individuals who fall below certain income levels. Massachusetts's Medicaid Program was commonly known as "MassHealth."

7.     MassHealth was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities

2

who were providing medical benefits, items, and services for which payment could be made under the plan. Individuals who received MassHealth benefits are referred to as MassHealth "members."

8.      Health Plan 1 was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a health plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan.

## CPT Codes

9.      The American Medical Association published a manual entitled Current Procedural Terminology Codes (the "CPT Code"), which contained universally recognized billing codes used by and relied upon by health care providers and health care benefit programs, including those referenced above. This manual contained a list of CPT codes and a description of the corresponding services.

10.      When submitting bills to health care benefit programs, health care providers or persons billing on their behalf had to identify the proper CPT codes that corresponded to the services they provided.

11.      NOVA and DANA had clinicians who could prescribe medications, monitor patient use, and adjust dosing of medications as necessary. Clinicians met with patients at regularly scheduled intervals to conduct medication management visits, for which they billed payors, including federal health care programs, using evaluation and management ("E&M") CPT codes. Prescribers could provide psychotherapy as the patients' needs demanded but were not required to

provide psychotherapy during their medication management visits. Psychotherapy was also documented using CPT codes.

12.     Medicare required that E&M visits were coded and billed based on the elements of the history, exam, and medical decision-making required by the complexity and intensity of the patient's condition.[1] E&M CPT codes had five levels of service based on increasing amounts of treatment provided. A higher-level E&M code—representing a more comprehensive or complex visit—garnered higher reimbursement from Medicare and thus was more lucrative for the practice.

13.     The CPT Code described E&M codes 99211 through 99215 for established patients as follows:

      a.     99211:  Office or other outpatient visit for the evaluation and management of an established patient that may not require the presence of a physician or other qualified health care professional. Usually, the presenting problem(s) are minimal.

      b.     99212:  Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and straightforward medical decision making. When using time for code selection, 10-19 minutes of total time is spent on the date of the encounter.

      c.     99213:  Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and low level of medical decision making. When using time for code selection, 20-29 minutes of total time is spent on the date of the encounter.

      d.     99214: Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When

---

[1] Prior to January 2021, a provider chose the appropriate CPT code for E&M services based on a complexity matrix of medical decision making. Beginning on or about January 1, 2021, a provider had the option to choose a CPT code for E&M services based on either the complexity of the medical decision making or the total time of the encounter.

using time for code selection, 30-39 minutes of total time is spent on the date of the encounter.

    e.    99215: Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and high level of medical decision making. When using time for code selection, 40-54 minutes of total time is spent on the date of the encounter.

14.    If psychotherapy was provided during the E&M visit, a CPT code was added in addition to the E&M code to account for the time spent providing psychotherapy. Add-on codes were eligible for payment only if reported with an appropriate primary service performed on the same date. Add-on codes also garnered higher reimbursement from Medicare and also were more lucrative for the practice.

15.    The CPT Code described psychotherapy add-on codes 90833 and 90836 as follows:

    a.  90833: Add-on psychotherapy code used when a clinician provides 16-37 minutes of psychotherapy during an evaluation and management visit.

    b.  90836: Add-on psychotherapy code used when a clinician provides 38-52 minutes of psychotherapy during an evaluation and management visit.

16.    For example, if a patient had a medication management visit and during the same visit the clinician provided 20 minutes of psychotherapy, then the clinician would select the appropriate E&M code based on medical decision making, and 90833 as the add-on psychotherapy code.

17.    Additionally, clinicians could provide standalone psychotherapy without medication management. The CPT Code described psychotherapy codes 90834 and 90837 as follows:

    a.  90834: Psychotherapy, 45 minutes with patient.

    b.  90837: Psychotherapy, 60 minutes with patient.

CPT code 90837 garnered higher reimbursement from Medicare than 90834 and thus was more lucrative for the practice.

Scheme to Defraud

18.     From in or about January 2017 through in or about April 2022, SARAVIA orchestrated a scheme to defraud health care benefit programs by directing false billing for patient visits. The purpose of the scheme was to unlawfully enrich NOVA and DANA by submitting or causing the submission of false and fraudulent claims to insurers for payment for therapy services that were not provided, and by upcoding claims for psychotherapy visits.[2]

19.     To carry out the scheme, SARAVIA directed a group of "billers"—individuals with no billing or medical training, who did not work with the billing department at either NOVA or DANA and who did not have contact with medical providers at NOVA or DANA in advance of entering the codes—to enter CPT codes for therapy services that were not provided and to upcode CPT codes used for psychotherapy visits.

20.     SARAVIA further enabled the scheme to defraud health benefit programs by submitting, or directing the submission of, false claims for treatment that was not provided or for more complex — and thus more expensive—treatment than was provided.

Patient 1

21.     On or about July 26, 2017, NOVA Clinician 1 provided medication management services to Patient 1. NOVA Clinician 1 did not provide psychotherapy to Patient 1 on that date.

---

[2] Upcoding means selecting a CPT code that reimburses at a higher rate than the appropriate CPT code for the service that the provider rendered.

22.     On or about July 26, 2017, SARAVIA directed a biller to enter a charge for 90836 (45 minutes of add-on psychotherapy) for Patient 1's visit, knowing the charge to be false.

23.     On or about July 26, 2017, NOVA submitted a false claim to Medicare and Medicaid for add-on psychotherapy services that were not provided to Patient 1.

### Patient 2

24.     On or about November 8, 2019, NOVA Clinician 2 provided medication management services to Patient 2. NOVA Clinician 2 did not provide psychotherapy during the visit.

25.     Following the appointment, SARAVIA directed a biller to enter a charge for 90833 (30 minutes of add-on psychotherapy) for Patient 2's visit, knowing the charge to be false.

26.     On or about November 18, 2019, NOVA submitted a false claim to Medicare Part B for psychotherapy services that were not provided to Patient 2.

### Patient 3

27.     On or about February 3, 2021, Patient 3 had a visit scheduled with DANA Clinician 1 but did not attend the appointment. DANA Clinician 1 accordingly did not document a visit with Patient 3 on that date.

28.     On or about February 5, 2021, SARAVIA directed a biller to enter various charges, including 90836 (45 minutes of add-on psychotherapy) for the visit that did not take place, knowing the charge to be false.

29.     On or about February 19, 2021, DANA submitted a false claim to Health Plan 1 for psychotherapy services that were not provided to Patient 3.

Patient 4

30.     On or about March 4, 2021, DANA Clinician 2 provided medication management services to Patient 4.  DANA Clinician 2 did not provide psychotherapy to Patient 4 on that date.

31.     On or about March 9, 2021, SARAVIA directed a biller to enter a charge for 90833 (30 minutes of add-on psychotherapy ) for Patient 4's visit, knowing the charge to be false.

32.     On or about March 9, 2021, DANA submitted a false claim to MassHealth for psychotherapy services that were not provided to Patient 4.

Patient 5

33.     On or about May 20, 2021, NOVA Clinician 3 provided medication management services to Patient 5. NOVA Clinician 3 did not provide psychotherapy to Patient 5 on that date.

34.     On or about May 21, 2021, SARAVIA directed a biller to enter a charge for 90833 (30 minutes of add-on psychotherapy) for Patient 5's visit, knowing the charge to be false.

35.     On or about May 25, 2021, NOVA submitted a false claim to Medicare for psychotherapy services that were not provided to Patient 5.

Patient 6

36.     On or about January 9, 2022, NOVA Clinician 4 provided 45 minutes of psychotherapy to Patient 6. NOVA Clinician 4 documented the psychotherapy using CPT code 90834 (45 minutes of psychotherapy).

37.     On or about January 12, 2022, SARAVIA directed a biller to enter a charge for 90837 (60 minutes of psychotherapy) for Patient 6's visit, knowing the charge to be false.

8

38.     On or about January 12, 2022, NOVA submitted a false claim to Medicare based upon 60 minutes of psychotherapy, when only 45 minutes were provided.

COUNTS ONE – SIX
Health Care Fraud
(18 U.S.C. § 1347)

The U.S. Attorney alleges:

39.     The U.S. Attorney re-alleges and incorporates by reference paragraphs 1-38 of this Information.

40.     From in or about January 2017 and continuing until in or about April 2022, in the District of Massachusetts and elsewhere, the defendant,

MIGUEL SARAVIA,

knowingly executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of these health care benefit plans, by means of materially false and fraudulent pretenses, representations, and promises, by submitting, willfully causing the submission, and aiding and abetting in the submission of materially false and fraudulent claims for services; to wit, by submitting claims for add-on psychotherapy E/M services that NOVA and DANA did not provide, and by upcoding claims for psychotherapy visits on or about the dates set forth below:

| Count | Approximate Date of Service | Patient | Approximate Date of Offense | CPT Code Fraudulently Billed | Health Care Benefit Program |
|---|---|---|---|---|---|
| 1 | July 26, 2017 | Patient 1 | July 26, 2017 | 90836 | Medicare, MassHealth |
| 2 | January 12, 2019 | Patient 2 | September 3, 2019 | 90836 | Medicare Part B |
| 3 | February 3, 2021 | Patient 3 | February 19, 2021 | 99214+90836 | Health Plan 1 |
| 4 | January 29, 2021 | Patient 4 | March 9, 2021 | 90833 | MassHealth |
| 5 | May 20, 2021 | Patient 5 | May 25, 2021 | 90833 | Medicare |
| 6 | January 9, 2022 | Patient 6 | January 12, 2022 | 90837 | Medicare |

All in violation of Title 18, United States Code, Section 1347.

FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(7))

The U.S. Attorney further alleges:

41.    Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1347, set forth in Counts 1 through 6, the defendant,

MIGUEL SARAVIA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.  The property to be forfeited includes, but is not limited to, the following assets:

a.   $577,165.50, to be entered in the form of a forfeiture money judgment.

42.    If any of the property described in Paragraph 41, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(7), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 41 above.

11

All pursuant to Title 18, United States Code, Section 982(a)(7).

JOSHUA S. LEVY
Acting United States Attorney

By: _____
KELLY LAWRENCE
MACKENZIE QUEENIN
LINDSEY ROSS
STEVEN SHAROBEM
Assistant U.S. Attorneys

Date: September 10, 2024

12